UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| JAMES T. CASEY, JR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Case No. 18-cv-11211-DJC |
| 3M CORPORATION and APAX PARTNERS, | | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                   February 12, 2019

**I.**     **Introduction**

Plaintiff James T. Casey, Jr. ("Casey"), proceeding *pro se*, has filed the instant lawsuit against Defendants 3M Company ("3M"), which is incorrectly identified as 3M Corporation in the operative complaint, and Apax Partners (collectively, "Defendants"). D. 1-1 at 15-19. Casey brings design defect and negligence claims against Defendants in connection with a GPS monitoring bracelet that allegedly malfunctioned while Casey wore the device, causing Casey to breach a condition of his pre-trial probation. Id. Although there has been some confusion around the identity of named defendant Apax Partners, Casey has since clarified in pending motion papers that he intended to name Apax Partners LLP ("Apax") as a defendant in this action.[1]

---

[1] Although Casey named Apax Partners LLP ("Apax") in his state court summons, D. 14-6, Casey argued in his opposition to Apax's motion to dismiss that Apax is not a party to this action, see, e.g., D. 24 at 5. Casey asserted that the "actual defendant" is Apax Partners LP, a company that

1

Apax has moved to dismiss the action for lack of personal jurisdiction and insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), respectively. D. 13. Casey now moves to amend the operative complaint to, among other things, voluntarily dismiss 3M from this action, bring new claims against Apax and to add claims against Alligator Holdco Ltd. ("Alligator") and the Commonwealth of Massachusetts Office of the Commissioner of Probation ("Probation Department"). D. 28. For the reasons explained below, the Court ALLOWS Apax's motion to dismiss. The Court DENIES IN PART Casey's motion to amend the complaint as to the claims against Apax, the Probation Department and Alligator. The Court ALLOWS IN PART the motion to amend to the extent it seeks to dismiss 3M voluntarily.

## II. Standard of Review

### A. Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service

The Court must apply the prima facie standard of review when evaluating a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) without holding an evidentiary hearing. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). To meet his burden of establishing the Court has personal jurisdiction under the prima facie standard, Casey must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Swiss Am. Bank, 274 F.3d at 618 (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.

---

purportedly had an office at "445 Park Avenue" in New York, New York and has since moved to Maryland. D. 24 at 1. In his subsequently filed motion to amend, however, Casey insists that he intended to file the instant lawsuit against Apax. D. 28 at 1. Apax, for its part, is proceeding under the assumption that it is the entity Casey intended to sue. D. 14 at 2-3 n.1; D. 27 at 2. For the purpose of resolving the pending motions, the Court considers Apax the named defendant in this action.

See Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The Court will not "credit conclusory allegations or draw farfetched inferences," Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994), and recognizes that it is the plaintiff's burden to "verify the facts alleged through materials of evidentiary quality." Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)). The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

As to Apax's Rule 12(b)(5) motion, "[a] district court may dismiss a complaint for a plaintiff's failure to effectively serve a defendant with process." Sosa Polanco v. United States, No. CV 17-1327 (JAG), 2017 WL 9772872, at *1 (D.P.R. Dec. 13, 2017). "The Court may consider such matters outside of the pleadings when deciding a motion to dismiss based upon lack of service of process under Rule 12(b)(5)." Awadh v. Tourneau, No. 15-cv-13993-DJC, 2017 WL 1246326, at *1 n.2 (D. Mass. Feb. 17, 2017). Where "[the defendant] challenges service of process pursuant to Rule 12(b)(5), [the plaintiff] has the burden of proving he effected proper service." Id. at *2.

### B. Motion to Amend

In considering Casey's motion to amend the complaint, the Court recognizes that "leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2) and Resolution Trust Corp. v. Gold, 30 F.3d 251,

3

253 (1st Cir. 1994)). To evaluate futility, the Court determines if the amended complaint fails to state a claim upon which relief could be granted, which is the same standard used by the Court to evaluate a motion to dismiss under Rule 12(b)(6). Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487, at 611 (2d ed. 1990)).

## III. Factual Background

The following facts are as alleged in the operative complaint and attachments thereto, D. 1-1 at 15-24, and uncontroverted facts set forth by Apax for the purpose of the motion to dismiss for lack of personal jurisdiction, D. 13. At some point prior to May 18, 2015, Casey was ordered to wear a GPS monitoring bracelet as a condition of "pre-trial probation." D. 1-1 at 16 ¶ 5. On May 18, 2015, Casey received a call from an assistant coordinator of the Probation Department's Electronic Monitoring Program ("ELMO"), explaining that the monitoring bracelet was no longer transmitting a signal with Casey's location. Id. ¶¶ 5-6. After a failed attempt at troubleshooting, the assistant coordinator informed Casey that he should report to his probation officer by the next morning. Id. ¶ 8. Casey alleges that about one hour later, police officers arrived at his home and arrested him because of the bracelet's purported malfunction. Id. ¶ 9. After two days of incarceration, Casey was released on May 20, 2015. Id. ¶ 12. According to the operative complaint, ELMO leases GPS monitoring bracelets from 3M and utilizes 3M's software to transmit data. Id. ¶ 10. Casey alleges that 3M divested its electronic monitoring business to an unidentified affiliate of Apax on or about October 3, 2017. Id. ¶ 11.

4

On March 12, 2018, Casey sent a letter addressed to "Apax Partners" at "443 Park Avenue, New York, NY 10022" regarding his intent to file suit against the company due to its purported ownership of 3M's divested electronic monitoring business, including the allegedly defective GPS monitoring bracelet at issue. D. 1-1 at 21. The operative complaint likewise suggests that "Apax Partners" is a business located at the same address on Park Avenue in New York, New York. D. 1-1 at 16 ¶ 4. The summons and complaint, however, were placed in an envelope addressed to "Apax Partners LLP" at "601 Washington Avenue, 53rd Floor, New York, New York." D. 14 at 10; D. 14-2.

Apax maintains that it is a private equity advisory firm registered under the laws of England and Wales, with its principal place of business in London, England. D. 14-1 ¶¶ 1, 4. Apax asserts that it does not have an office in New York and it never assumed the rights or liability of 3M's electronic monitoring business. D. 14-1 ¶¶ 7-8.

**IV.     Procedural History**

Casey filed this action in Suffolk Superior Court on or about April 23, 2018. D. 1-1 at 19. 3M removed the action to this Court on June 4, 2018. D. 1. Apax has now moved to dismiss. D. 13. Casey subsequently moved to amend the operative complaint. D. 28.

**V.      Discussion**

    **A.      <u>Personal Jurisdiction</u>**

Apax contends the prima facie case for personal jurisdiction has not been established here given that Apax was formed and maintains a principal place of business in London, England and lacks any connection to Massachusetts. <u>See, e.g.</u>, D. 14 at 2. "Prior to exercising personal jurisdiction over a nonresident defendant, a judge must determine that doing so comports with both the forum's long-arm statute and the requirements of the United States Constitution." <u>SCVNGER,</u>

Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017) (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 290 (1980)). The "Massachusetts [long-arm] statute does not purport to extend jurisdiction as far as due process would allow." Id. at 328. The Court's analysis of the Massachusetts long-arm statute, therefore, "precede[s] consideration of the constitutional question." Id. at 325.

        *1.     Massachusetts Long-Arm Statute*

The Massachusetts long-arm statute, Mass. Gen. L. c. 223A, § 3, enumerates eight grounds on which a nonresident defendant may be subjected to personal jurisdiction. Casey has not cited to specific sections of the long-arm statute that are applicable to his jurisdictional claim. Moreover, the sections of the long-arm statute that might otherwise be relevant, namely c. 223A, § 3(a), (b), (c), (d)—do not apply given that the record here does not reveal that Apax "transact[ed] any business in this commonwealth," "contract[ed] to supply services or things in this commonwealth," "caus[ed] tortious injury by an act or omission in this commonwealth," or "caus[ed] tortious injury in this commonwealth by an act or omission outside this commonwealth if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. L. c. 223A, §3(a)-(d).

Instead, Casey appears to contend, as a general matter, that personal jurisdiction is appropriate because an unidentified "affiliate" of Apax acquired 3M's electronic monitoring business, which allegedly leased GPS monitoring bracelets to the Probation Department in Massachusetts. D. 1-1 at 16 ¶ 11.² In other words, Casey's jurisdictional claim depends on

---

² The affiliate is not mentioned by name in the operative complaint or papers filed in opposition to Apax's motion to dismiss. Casey's motion to amend the complaint, however, identifies Alligator

6

whether another company's alleged contacts with Massachusetts may be imputed to Apax. For support, Casey points to a letter, dated March 26, 2018, from a 3M representative who explained that "3M completely divested its electronic monitoring business to an affiliate of Apax Partners on October 3, 2017," D. 24-1 at 5, and a screenshot purportedly from Apax's website, dated June 1, 2017, that indicates "[f]unds advised by Apax Partners today announced a definitive agreement to acquire 3M's . . . electronic monitoring business," D. 24-1 at 29.[3]

Even if the Court concluded that the affiliate's activities within the forum rendered personal jurisdiction appropriate as to that entity, Casey has not established that such contacts may be imputed to Apax. The "theory for imputing contacts from one entity to another is a theory based on piercing the corporate veil." Scallop Imaging, LLC v. Blackhawk Imaging, LLC, No. 17-CV-10092-ADB, 2018 WL 1440314, at *5 (D. Mass. Mar. 22, 2018) (quoting Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 253 (D. Mass. 2017)). "The veil piercing standard in Massachusetts is demanding, as corporations are presumed to be separate and distinct entities notwithstanding [the] relationships between them." Id. (alteration in original) (citations and internal quotation marks omitted).

Under Massachusetts law, disregard of corporate separateness is permitted where two factors are met: (1) "when there is active and direct participation by the representatives of one

---

Holdco Ltd. as the Apax affiliate that allegedly acquired 3M's electronic monitoring business. See D. 28 at 1.

[3] In its reply, Apax suggests that the Court may not consider documents outside of the pleadings for the purpose of conducting the jurisdictional analysis. See D. 27 at 3 (challenging Casey's reliance on documents "outside of the pleadings"). To the contrary, the First Circuit has held that plaintiffs "ordinarily cannot rest upon the pleadings" to set forth a prima facie showing of personal jurisdiction, "but [are] obliged to adduce evidence of specific facts." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). As a result, the Court may "accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Id.

7

corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship," or (2) "when there is a confused interminingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). Here, Casey has not proffered any facts to support piercing the corporate veil and conferring jurisdiction upon Apax as the alter ego of the affiliated company that allegedly transacted business with the Probation Department in Massachusetts. Indeed, other than allegations that Apax advised the affiliated company at issue, see D. 24-1 at 29 (providing screenshot purportedly from Apax's website which states that "[f]unds advised by Apax Partners" acquired 3M's electronic monitoring business), the record before the Court includes no information regarding the relationship between these companies nor does it indicate that Apax had pervasive control over or shared common ownership with its alleged affiliate. Because Casey has not met this standard for piercing the corporate veil and where no provision of the Massachusetts long-arm statute otherwise authorizes personal jurisdiction over a nonresident corporation with no forum contacts in the circumstances alleged here, the Court concludes that Casey has not satisfied the prima facie standard for personal jurisdiction. A failure to meet the requirements of the long-arm statute is fatal to personal jurisdiction over Apax, but the Court nevertheless turns to the constitutional due process analysis.

    2.    *Due Process*

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction may be asserted when "a suit arises directly out of [defendant's] forum-based

activities," while general jurisdiction "may be asserted in connection with suits not directly founded on [defendant's] forum-based conduct." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990).

### a) General Jurisdiction

For the Court to exercise general jurisdiction over a foreign company such as Apax, the company's "affiliations with the State" must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (U.S. 2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). The Supreme Court has further explained that "[w]ith respect to a corporation, the place of incorporation and principal place of business" are the "paradig[m]" bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (alteration in original).

Casey has not specifically addressed whether Apax is subject to general jurisdiction in Massachusetts. Construing the facts "in the light most congenial to the plaintiff's jurisdictional claim," Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (citations and quotation marks omitted), the Court concludes that no set of facts relevant to the jurisdictional analysis at issue here support general jurisdiction. Casey has not alleged, for example, that Apax maintains a direct affiliation with the forum, let alone contacts that are so continuous and systematic as to render a company with its principal place of business in London, England at home in Massachusetts. General jurisdiction, therefore, does not apply to Apax.

### b) Specific Jurisdiction

The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro–Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009) and N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The Court must find that all

three are present to assert personal jurisdiction over a defendant. See id. The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Electronics Co., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

With respect to relatedness, the Court considers whether the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09-cv-10138-DJC, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (alterations in original) (quoting Astro–Med, 591 F.3d at 9). Although this is a "flexible, relaxed standard," id. (quoting Astro–Med, 591 F.3d at 9), relatedness still requires a causal relationship between Casey's claims and Apax's forum-related conduct, Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Here, Casey has not alleged sufficient facts to demonstrate that Apax engaged in any forum-related conduct. Casey's defective design and negligence claims, as alleged in the operative complaint, arise from an allegedly defective GPS monitoring device that 3M leased to the Probation Department and which malfunctioned while Casey wore it as a condition of pre-trial probation. D. 1-1 at 16 ¶¶ 5-10. On October 3, 2017, as alleged, 3M divested its electronic monitoring business to Apax's affiliate. Id. ¶ 11. Casey does not allege that Apax independently engaged in any activity in Massachusetts, rather, his jurisdictional claim attempts to impute an affiliated company's forum related contacts to confer jurisdiction over Apax. As previously explained, Casey has failed to establish a relationship between Apax and the affiliate at issue that would allow the Court to consider the affiliate's alleged forum related contacts in exercising jurisdiction over Apax. Absent facts that suggest Apax engaged this forum either directly or indirectly, Casey cannot satisfy his burden under the relatedness inquiry.

Turning to the purposeful availment prong of the analysis, the Court concludes that Apax has not "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319). Neither the operative complaint and attachments thereto, D. 1-1 at 15-24, nor the proposed amended complaint, D. 28-1, contain allegations that Apax conducted any activity that could be construed as availing itself to the "benefits and protections of [Massachusetts] laws," id., as is required to show purposeful availment. Apax asserts, by sworn affidavit, that it does not own or lease property in Massachusetts, it has not consented to personal jurisdiction in any court in Massachusetts nor does it have an office, mailing address, telephone number, employees or any agents in the Commonwealth. See, e.g., D. 14-1 ¶¶ 5, 9. Casey, on the other hand, does not allege that Apax purposefully availed itself of the instant forum and, instead, argues specific jurisdiction is appropriate as to Apax due to 3M's transactions with the Probation Department. Casey has also alleged, however, that Apax's affiliate (as opposed to Apax) acquired 3M's monitoring business along with the rights and liabilities of the same. D. 1-1 at 16 ¶ 11. Given Apax's uncontroverted testimony and Casey's failure or inability to rebut the same, the Court concludes that the purposeful availment prong is not satisfied here.

Finally, for the reasons mentioned above, including uncontradicted testimony that Apax has no contacts with this forum, the Court concludes that exercising personal jurisdiction over Apax would be unreasonable. None of the "Gestalt factors" germane to the reasonableness inquiry counsel in favor of exercising personal jurisdiction over Apax. See Cossaboon, 600 F.3d at 33 n.3 (outlining the Gestalt factors, including "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the

controversy, and (5) the common interests of all sovereigns in promoting substantive social policies") (quoting Harlow, 432 F.3d at 67). Accordingly, Casey has also failed to satisfy this factor. The Court, therefore, concludes that Casey has not made a prima facie showing of personal jurisdiction over Apax under the Massachusetts long-arm statute or as a matter of constitutional due process.[4] In light of this ruling, the Court does not reach Apax's other grounds for dismissal.

B. **Proposed Amended Complaint**

Also pending is Casey's ripe motion for leave to amend the operative complaint pursuant to Fed. R. Civ. P. 15(a)(2). Casey seeks leave to amend his complaint to dismiss 3M from this action, to bring new claims against Apax and to add Alligator Holdco Ltd. ("Alligator") and the Commonwealth of Massachusetts Office of the Commissioner of Probation ("Probation Department"). First, although Casey has incorrectly fashioned his voluntary dismissal of 3M as an amendment to the operative complaint, the Court, nevertheless, dismisses 3M as a defendant in the instant litigation pursuant to Fed. R. Civ. P. 41(a). Second, as to Casey's attempt to "add" Apax as a defendant, see D. 28 at 1, the Court denies this request as moot given that Apax was already a party to this action and in light of the Court's ruling on Apax's motion to dismiss for lack of personal jurisdiction.

Casey's proposed amendments to add the Probation Department and Alligator as defendants come over six months after this action was removed to this Court and, therefore, raise questions regarding Casey's diligence in seeking leave to amend. Perez v. Hosp. Damas, Inc., 769 F.3d 800, 802 (1st Cir. 2014) (explaining that "undue delay in moving to amend, even standing

---

[4] To the extent Casey seeks jurisdictional discovery in his opposition papers, see D. 24 at 9, this request is denied as Casey has failed to make a colorable claim of personal jurisdiction over Apax. Am. Med. Sys., Inc. v. Biolitec, Inc., 604 F. Supp. 2d 325, 330 (D. Mass. 2009).

12

alone, may be . . . an adequate reason" to deny a motion for leave to amend); United States ex rel. Hagerty v. Cyberonics, Inc., No. 13-10214-FDS, 2015 WL 7253675, at *3 (D. Mass. Nov. 17, 2015) (observing that "[d]elays for periods as short as eleven months, four months, and less than three months have been found to constitute undue delay"). Setting aside the question of undue delay, the Court notes that Casey's proposed claim against the Probation Department pursuant to 42 U.S.C. § 1983 is barred by the Eleventh Amendment and, therefore, futile. The Probation Department is a state agency, see Chmielinski v. Commonwealth of Mass. Office of Comm'r of Prob., 484 F. Supp. 2d 201, 203 (D. Mass. 2007) (explaining that the Probation Department is an agency of the Commonwealth of Massachusetts), and "[i]t is settled beyond peradventure . . . that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." Nwaubani v. Grossman, 199 F. Supp. 3d 367, 376 (D. Mass. 2016), (alteration in original) (quoting Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)). "The same is true for injunctive relief where '[s]tates and their agencies are entitled to sovereign immunity regardless of the relief sought.'" Collymore v. Suffolk Cty. Sheriff Dep't, No. CV 18-11217-NMG, 2018 WL 3720057, at *1 (D. Mass. Aug. 3, 2018) (alteration in original) (quoting Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009)). Moreover, even if the Probation Department was not immune, it is not a person subject to suit under 42 U.S.C. § 1983. See Canales v. Gatzunis, 979 F. Supp. 2d 164, 171 (D. Mass. 2013) (explaining that "neither states nor state officials sued in their official capacities for damages are 'persons' for purposes of § 1983"). Accordingly, Casey's sole claim against the Probation Department is barred and the amended complaint is futile as to that claim.

The proposed amended complaint is futile for the additional reason that Casey has failed to state a claim against Alligator under either Mass. Gen. L. c. 93A or Mass. Gen. L. c. 93B. First,

13

a Chapter 93A claim requires that plaintiffs serve a written demand letter on prospective defendants at least thirty days prior to filing an action. Mass. Gen. Law c. 93A, § 9(3). "The statutory notice requirement is not merely a procedural nicety, but, rather, a pre-requisite to suit" and "must be alleged in the plaintiff's complaint." Rodi v. S. New Engl. Sch. of Law, 389 F. 3d 5, 19 (1st Cir. 2004) (citations and internal quotation marks omitted). Although the notice requirement does not apply where the defendant does not maintain a place of business or keep any assets in Massachusetts pursuant to Mass. Gen. Laws c. 93A, § 9(3) (providing in relevant part that subsection 3 does not apply "if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth"), Casey has not alleged facts indicating that Alligator does not maintain a place of business or keep assets in Massachusetts.

Second, Casey's Chapter 93B claim against Alligator also fails because the instant dispute does not involve unfair and deceptive acts in connection with a motor vehicle in the Commonwealth. See Mass. Gen. L. c. 93B, § 2 (explaining that Chapter 93B is applicable and jurisdiction is appropriate as to "[a]ny person who engages . . . in purposeful contacts in the commonwealth in connection with the offering or advertising for sale or has business dealings with respect to a motor vehicle in the commonwealth"). Accordingly, Casey's motion to amend the complaint is also denied as to the claims against the Probation Department and Alligator.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Apax's motion to dismiss. D. 13. The Court DENIES IN PART Casey's motion to amend the complaint as to the claims against Apax, the Probation Department and Alligator. D. 28. The Court ALLOWS IN PART Casey's motion to amend only to the extent it voluntarily dismisses 3M from the litigation. Id.

**So Ordered.**

/s/ Denise J. Casper
                                                          United States District Judge